# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SEGAL, individually, and on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AQUENT LLC, a Massachusetts limited liability company, et al.,<br><br>Defendants. | CASE NO. 18cv346-LAB (JLB)<br><br>**ORDER GRANTING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION [Dkt. 30];**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CORPORATE DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE [Dkt. 29]** |

Plaintiff Elizabeth Segal sued Aquent LLC and Scout Exchange, LLC ("Corporate Defendants") as well as several individual officers of those companies ("Individual Defendants"). The Individual Defendants now move to dismiss Segal's complaint for lack of personal jurisdiction and the Corporate Defendants move to dismiss and/or strike portions of the complaint under FRCP 12(b)(6) and 12(f). For the reasons below, the Individual Defendants' Motion is **GRANTED** and the Corporate Defendants' Motion is **GRANTED** in part and **DENIED** in part.

///

1. **Background**

On April 4, 2018, Segal filed a Second Amended Complaint ("SAC") against the various Defendants, alleging a variety of wage and hour violations on behalf of herself and a putative class consisting of all the Corporate Defendants' current and former employees who worked in California during the last four years. The Corporate Defendants' business model involves hiring individuals like Segal as employees and assigning them out to companies looking to hire short-term workers. Dkt. 20 at ¶22. The companies needing labor, in turn, pay the Corporate Defendants a fee for the placement. Dkt. 20 at 26. While Plaintiff and her fellow employees were paid by Corporate Defendants and performed their work remotely, their hours were largely determined by the companies they were assigned to. *Id.* at ¶32. The central allegation of Plaintiff's complaint is that Corporate Defendants' recruiters misrepresented the number of hours Plaintiff and her fellow employees would receive from their assigned companies, which led to her being unable to take on other paying work. *Id.* at ¶33-34. Plaintiff further claims that she was required to "report to work" via daily teleconference, regardless of whether there was work or not. *Id.* at ¶35-41. Plaintiff alleges that these misrepresentations and reporting requirements violate various provisions of California law.

In addition to the Corporate Defendants, Plaintiff also sued John Chuang, Doug Kaplan, Cheryl King, and Ken Lazarus[1], each of whom is a senior officer of either Aquent or Scout. *Id.* at ¶10-13. Segal's SAC pleads no facts about these Individual Defendants other than their corporate titles, but she argues that their positions with the Corporate Defendants make them an "other person acting on behalf of an employer," subjecting them to personal liability under Labor Code §§ 558 and 558.1. *Id.*

/ / /
/ / /
/ / /

---

[1] Lazarus has been voluntarily dismissed. Dkt. 28.

2. **Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

Each of the remaining Individual Defendants move to dismiss Plaintiff's SAC for lack of personal jurisdiction, alleging that there are insufficient contacts between the Defendants and California to permit this Court to exercise jurisdiction over them. FRCP 12(b)(2).

When a defendant moves to dismiss for lack of personal jurisdiction, the burden of proving personal jurisdiction rests with the plaintiff. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Personal jurisdiction over each defendant must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 784 (1984). Courts may not assume the truth of allegations in a pleading when those allegations are contradicted by affidavit. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

In considering personal jurisdiction in cases where no federal statute governing personal jurisdiction applies, the Court applies the law of the state in which the district court is located. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long-arm statute is coextensive with federal due process, so jurisdictional analysis for federal due process controls. *Id.* at 801. Personal jurisdiction is only proper where the defendant has "minimum contacts" with the forum state such that exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be either general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General personal jurisdiction is present where a defendant's ties to a state are so "continuous and systematic" as to render the defendant essentially at home in the forum state. *International Shoe*, 326 U.S. at 317. A defendant who is an individual is essentially at home in the state in which the defendant is domiciled. *Goodyear*, 564 U.S. at 924. Domicile requires a physical

presence and an intent to stay in the state indefinitely. *Rice v. Thomas*, 64 Fed.Appx. 628, 628-29 (9th Cir. 2003).

Specific personal jurisdiction in the Ninth Circuit is analyzed through a three-prong test. *Schwarzenegger*, 374 F.3d at 802. The first prong requires that the defendant have purposefully directed his activities at the forum state (in tort cases) or purposefully availed himself of the benefits of the forum state (in contract cases). *Id.* The second prong requires that the claim arise out of the defendant's forum-related activity. *Id.* The third prong requires that the exercise of personal jurisdiction be reasonable. *Id.* The first prong must follow an effects test, under which the defendant must commit an intentional act, the act must be expressly aimed at the forum state, and the act must cause harm that the defendant knows is likely to be suffered in the forum state. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The second prong must satisfy a but-for causation test. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

A defendant's status as an employee does not shield them from liability for intentionally tortious acts. *Calder*, 465 U.S. at 790. However, mere association with a corporation that causes injury is not sufficient to permit personal jurisdiction without a further reason for the court to disregard the corporate form. *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).

### a. **John Chuang**

John Chuang is the Chairman of Aquent. Dkt. 30-2. He states in an affidavit that he is a citizen and resident of Massachusetts. *Id.* He does not maintain a residence in California, does not own any property in California, and does not intend to reside in California. *Id.*

Plaintiff alleges that general personal jurisdiction is proper over Chuang because Aquent LLC does business in California. Even if "doing business" were the standard for jurisdiction over corporate entities (it is not), Aquent's activity does not justify personal jurisdiction over its employees. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction

over the corporation which employs him . . . ."). Chuang stated in affidavit that he was not involved with the decisions leading to the alleged tort, and his relationship to the company is not in itself sufficient to permit jurisdiction. Plaintiff offered no evidence to contradict Chuang's affidavit, and the allegations in the complaint cannot be taken as true because they are contradicted by Chuang's affidavit. *Data Disc, Inc*, 557 F.2d at 1284. General personal jurisdiction over Chuang is therefore improper because he is not domiciled in California. Aquent's general business activity does not affect the analysis.

Specific personal jurisdiction over Chuag is also inappropriate. Chuang's only contacts with California are a small number of visits for vacations or work-related purposes. Dkt. 30-2. But there is no evidence these visits were a but-for cause of the harms Segal alleges. *Bancroft & Masters, Inc.*, 223 F.3d at 1088. This Court therefore has no specific personal jurisdiction over Chuang.

For these reasons, this Court has neither general personal jurisdiction nor specific personal jurisdiction over Chuang.

### b. Douglas Kaplan

Douglas Kalpan is the CEO of Aquent. Dkt. 30-3. Kaplan states in an affidavit that he is a resident and citizen of Massachusetts. *Id.* Like Chuang, he states that he does not maintain a residence in California, does not own any property in California, and does not intend to reside in California. *Id.*

Plaintiff's arguments as to why this Court should exercise jurisdiction over Kaplan are identical to her arguments regarding Chuang, and they fail for the same reasons. Although Kaplan visited California more often than Chuang, his visits likewise do not constitute a but-for cause of Segal's alleged harms. As stated in his affidavit, he did not supervise California employees, oversee California operations, or develop any of the policies at issue. *Id.* Kaplan's contacts with the state of California thus do not give rise to jurisdiction over him.

/ / /

/ / /

### c. Cheryl King

Cheryl King is the President of Aquent Staffing and Studios, a division of Aquent. Dkt. 30-4. King states in affidavit that she is a citizen and resident of the state of Washington. *Id.* Although she owns personal property in California, she has no intent to reside there. *Id.* Plaintiff has made no allegation that King is domiciled in California, nor has Plaintiff produced any evidence of such. There is no evidence or even allegation of the necessary intent to reside in California permanently.

For the reasons set out with respect to Chuang and Kaplan, this Court finds that exercising jurisdiction over King would be improper.

### d. Labor Code § 558.1

Segal argues that even if the Court could not ordinarily exercise personal jurisdiction over the Individual Defendants, California Labor Code § 558.1 provides jurisdiction. That statute provides that "[a]ny . . . *other person* acting on behalf of an employer, who violates, or causes to be violated, [certain provisions of the California Labor Code] may be held liable as the employer for such violation." Cal. Labor Code § 558.1(a) (emphasis added). Segal claims that the Individual Defendants are "other persons" acting on behalf of the Corporate Defendants and thus may be personally liable under California law.

Segal's argument, however, confuses liability with jurisdiction. It may well be that she could hold the Individual Defendants liable under § 558.1. In order to do so, though, the Court must first have jurisdiction over them. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("Liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum."). Section 558.1 does not itself create jurisdiction. As the Individual Defendants point out, a recent case from this District involved a similar claim of individual liability under § 558.1. *Overholt v. Airista Flow Inc.*, 2018 WL 355231, at *10–11 (S.D. Cal. Jan.

10, 2018). Rather than assume the statute created jurisdiction, the court there applied traditional personal jurisdiction analysis and found that jurisdiction was lacking.

Plaintiff relies on *Jamshid-Negad v. Kessler*, 15 Cal.App.4th 1704 (Cal.App. 1 Dist. 1993) to support her argument that § 558.1 provides a jurisdictional hook. In that case, the court found that personal jurisdiction could be exercised over Connecticut parents who sent their minor son to a public university in California, where he was alleged to have committed a tort against the Plaintiffs. *Id.* However, the court did not rely on the relevant liability statute[2] for jurisdiction; it found that defendants purposefully availed themselves of the forum state. *Id.* at 1709-10. In other words, the court relied on traditional personal jurisdiction analysis.

For these reasons, Plaintiff's claim that § 558.1 provides an independent basis for personal jurisdiction over the Individual Defendants fails. There being no basis for this Court to exercise personal jurisdiction over the Individual Defendants, their Motion to Dismiss is granted.

3. **Corporate Defendants' Motion to Dismiss and/or Strike**

The Corporate Defendants move to dismiss or strike various portions of Plaintiff's complaint. Dkt. 29. The Court grants in part and denies in part their motion.

a. **Reporting Time Pay Subclass**

Defendants move to strike Plaintiff's "Reporting Time Pay" subclass as overly broad. A Rule 12 motion, however, is not the proper vehicle for this type of challenge. *Shaw v. Experian Solutions, Inc.*, 49 F.Supp.3d 702, 709 (S.D. Cal. 2012). Instead, a Rule 23 motion should be used to challenge class allegations. *Connelly v. Hilton Grant Vacations Co., LLC*, 2012 WL 2129364, at *3 (S.D. Cal. 2012). Defendants' motion to strike with respect to the subclass is denied.

/ / /

/ / /

---

[2] Cal. Civ. Code § 1714.1

### b. Reporting Time Pay Claim

Next, Defendants argue that Plaintiff's claims related to "Reporting Time Pay" fail as a matter of law and must be dismissed. Reporting time pay is governed by Cal. Code Regs., tit. 8, § 11040(5)(A), which provides that an employee is entitled to up to half their daily pay when that employee is "required to report for work and does report, but is not put to work." The issue in this case is whether an employee "reports for work" within the meaning of the statute when the employee is required to call by telephone to see if there is work available. This is a question of first impression for this Court, but it has been considered by the Central District of California in *Casas v. Victoria's Secret Stores, LLC*, 2014 WL 12644922, and the Eastern District of California in *Bernal v. Zumiez*, 2017 WL 3585230. Both cases contain similar facts to the instant case.

In *Casas*, the defendant-employer scheduled the plaintiff-employees for two separate types of shifts: regular work shifts, where the employees would report to work in the traditional fashion, and "call-in" shifts, where the plaintiffs would have to call two hours in advance of the shift and then, if asked, report to work. *Casas*, 2017 WL 358230, at *1. The defendant instructed plaintiffs to treat call-in shifts the same as regular work shifts and to not schedule any personal activities within those times. *Id.* The *Casas* court considered the plain meaning of the wage order and determined that "report for work" required physical presence. *Id.* at *3 (considering various dictionary definitions which impute a physical aspect). The *Casas* court further considered legislative history and reasoned that previous iterations of the wage order, which referred to reporting for work in terms of transporting oneself to the location, as well as the consistency in language throughout the various iterations of the wage order further support the determination that "report for work" requires physical presence. *Id.* at *4-5.

In *Bernal*, plaintiff-employees were required to call in an hour before regularly scheduled shifts to check if work would be available for them. *Bernal*, 2017 WL 3585230, at *1. These calls usually took five to ten minutes. *Id.* The *Bernal* court considered the plain language and concluded that reading a physical requirement into "report for work"

added an extraneous term to the definition, ultimately refusing to accept that interpretation. Turning to legislative history, the court held that an interpretation requiring a physical presence would defeat the purpose of protecting workers' general welfare, allowing employers to set up a phone-based system that would evade any reporting time liability. *Id.* at *4.

In the instant case, Segal alleges that Defendants' recruiters promised her 40 hours of work per week. But she was required to call ahead each day and, when she did, was often told there was no work available for her. She alleges that the Defendants required her to be available at those times regardless of whether work was available, thus precluding her from taking on other work. In her view, these calls constituted "report[ing] for work" that triggered the mandatory half-day pay under California law.

The Court is persuaded by the reasoning of the *Bernal* court: the statutory definition of "report for work" does not necessarily require a physical presence. There is nothing in the plain language of the statute that requires "reporting" be physical in nature. The Court declines to read into the statute an additional requirement not placed there by the legislature, especially in light of the general policy that wage and hour statutes should be construed liberally to promote worker protection. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004,1026-27 (2012). As the *Bernal* court points out:

> "The incentives that led employers to engage in behavior that caused the IWC to create the wage orders in the first place still exist: creating a surplus pool of contingent workers ready to begin work at a moment's notice, only to notify some number of them that their services would not be required, provides an enormous benefit to employers, while forcing workers to prepare a set of contingency plans depending on whether they are given a shift to work or not."

*Bernal*, 2017 WL 3585230, at *4. Segal's allegations, which must be accepted as true at this stage, implicate these same concerns. She claims that she was financially harmed because the Defendants overrepresented the number of hours she would receive, required her to forego any other work on her assigned days, and then failed to give her hours once she called in to report for work each day. As pled, the Court finds that Segal

1  "reported for work" within the meaning of the statute. Defendants' motion to dismiss with
2  respect to these claims is denied.[3]

### c. Labor Code §§ 216, 218, 225.5, 1182.12, 1197, and 1197.1

Defendants next move to strike or dismiss the portions of Segal's First Cause of Action predicated on Labor Code §§ 216, 218, 225.5, 1182.12, 1197, and 1197.1. Defendants argue that none of these code sections include a private right of action. Plaintiff concedes this point, but notes that, even if there is no private right of action, she may recover civil penalties for violation of these statutes under her PAGA claim. Defendants do not deny that she may assert violations of these statutes as part of her PAGA claim, which is her Fifth Cause of Action. Instead, they challenge whether she may do so individually and on behalf of the class in her First Cause of Action. The Court agrees with the Defendants that these statutes do not provide a private right of action and cannot support stand-alone claims. The portions of her First Cause of Action predicated on these provisions therefore fail as a matter of law and are dismissed. This does not affect whether Segal may assert violations of these statutes as part of her PAGA claim.

### d. Labor Code §§ 201 and 202

Defendants move to strike or dismiss portions of Plaintiff's Second Cause of Action for lack of standing. Labor Code § 201 concerns terminated employees and § 202 concerns quitting employees. Plaintiff was terminated from her employment, so Defendants argue she may not bring a claim under § 202 on behalf of quitting employees. Plaintiff argues that so long as an employee is affected by at least one labor code violation (here, § 201), they may pursue penalties on behalf of the state for unrelated violations by the same employer (here, § 202) under the PAGA statute. But, again, whether Segal can pursue a PAGA claim for violation of a statute is distinct from whether she can pursue an individual or class claim under that same statute. While she may be able to allege a

---

[3] The Court is aware that the Ninth Circuit is currently considering an appeal on this very issue. *Herrera v. Zumiez, Inc.*, Case No. 18-15135. The parties should keep the Court apprised of developments in that case.

1 violation of § 202 as part of her PAGA claim—she does not currently—she has no
2 standing to sue under that statute individually or on behalf of the putative class. *See In*
3 *re Adobe Sys. Privacy Lit.*, 66 F. Supp. 3d 1197, 1211 (N.D. Cal. 2014) (quoting *Warth v.*
4 *Seldin*, 422 U.S. 490, 502 (1975)) ("In a class action, named plaintiffs representing a class
5 'must allege and show that they personally have been injured, not that injury has been
6 suffered by other, unidentified members of the class to which they belong and which they
7 purport to represent.'"). Her Second Cause of Action is therefore dismissed to the extent
8 it is predicated on § 202.

### e. Labor Code § 226(a)(8)

Defendants move to strike or dismiss portions of Plaintiff's Third Cause of Action alleging a failure to provide accurate wage statements. Under Labor Code § 226(a)(8), wage statements must include "the name and address of the legal entity that is the employer." Segal's Complaint attaches a copy of her wage statement, which lists the following information:

> Aquent LLC
> Aquent, Vitamin T, Scout
> 501 Boylston Street, 3rd Floor
> Boston, MA 02116

Dkt. 20 at ¶63, Ex. 1. Segal argues that because Aquent, Vitamin T, and Scout are not legal entities, their inclusion on the paycheck violates § 226(a)(8).

Defendants note that Aquent, Vitamin T, and Scout are Aquent LLC's trade names or "dba's", and that courts routinely dismiss claims like Plaintiff's that are based on the inclusion of trade names on wage statements. *See, e.g., Delgado v. New Albertson's, Inc.,* 2009 WL 10670628, at *4 (C.D. Cal.) (granting defendant's motion for summary judgment where the wage statement listed the employer's name as "Albertson's, a SUPERVALU Company" rather than the official legal entity, "American Stores Company, LLC."). Here, Defendants argue, the wage statements are even more consistent with the statutory requirements because the wage statements list both the actual entity name *and* the trade names. The Court agrees. Aquent LLC was Plaintiff's employer, and the

inclusion of additional trade names on her pay check does not give rise to a cause of action under § 226(a)(8). The portion of Segal's Third Cause of Action based on a violation of § 226(a)(8) is therefore dismissed.

### f. PAGA Claim

Defendants move to strike portions of Plaintiff's PAGA claim on various grounds. A Rule 12(f) Motion to Strike may be granted to remove language in a pleading that is, as relevant here, either "redundant," "immaterial," or "impertinent." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). Language is "redundant" when it appears elsewhere in the complaint; is "immaterial" when it has no important relationship to the claim for relief; is "impertinent" when it does not pertain, and is not necessary, to the issues in question. *Id.* Motions to strike are generally disfavored. *Murphy v. Fullbright*, 2012 WL 4754730 (S.D. Cal. 2012). However, where the motion may have the effect of making the trial of the action less complicated, the motion to strike may be granted. *State of Cal. ex rel. State Lands Commission v. U.S.*, 512 F.Supp. 36 (N.D. Cal. 1981). A motion to strike references to a statute may be granted where no violation of the statute is alleged. *Conwright v. City of Oakland*, 2011 WL 855824 (N.D. Cal. 2011). The Court, at its discretion, may also treat a motion to strike as a Rule 12(b)(6) motion to dismiss. *See Kelley v. Corrections Corp. of America*, 750 F.Supp.2d 1132, 1146 (E.D. Cal. 2010).

Defendants argue that various statutory references in Plaintiff's Complaint should be stricken because she makes no effort to allege a violation. Specifically, Defendants point to Labor Code §§ 246, 246.5, 247, 247.5, 248.5, 512, 1198, 2810.3, and 2810.5. Although Plaintiff's opposition demonstrates that at least some of these statutory references are supported by her Complaint, which is all that's required at this stage of the case, the Court strikes: (1) her references to §§ 246, 247, and 2810.5, because notice and posting requirements are not bases for a PAGA action[4]; (2) her references to

---

[4] *See Titus v. McLane Foodservice, Inc.*, 2016 WL 4797497, at *6 (E.D. Cal. 2016)

1  §§ 246.5, 247.5, and 249.5, because injunctive relief, not PAGA penalties, is the only
2  relief available for sick leave claims[5]; and (3) her reference to § 512, which she admits
3  was included by mistake.  Defendants' motion to strike as to the other provisions is
4  denied.

5  Relatedly, Defendants argue that other statutory references should be stricken
6  because Plaintiff's Complaint has not *adequately alleged* a violation.  Specifically,
7  Defendants point to her claims under §§ 204, 204(b), 210, 225.5, 1174, 1174.5, 1198.5,
8  and 2804.  The Court is satisfied that Plaintiff has pled some basis for each of these
9  claims, which is all that's required to survive a Rule 12(f) Motion to Strike.  Defendants'
10 motion is denied as to these claims.

11 Defendants further move to strike references to statutes that "do not create any
12 employer obligation"—§§ 218, 218.5—or that are exclusively criminal—§ 216.  However,
13 Defendant fails to show that a statute with criminal penalties like § 216 cannot also be
14 basis for a PAGA claim.  Nor do Defendants show that Plaintiff's inclusion of §§ 218 and
15 218.5, the latter of which provides for attorneys' fees in wage claims, is impermissible.
16 Defendants' motion is denied as to these claims.

17 Defendants final request related to the PAGA claim is to strike references to
18 various PAGA penalties under the reasoning that each of these provisions has a specific
19 penalty, and § 2699(f) only provides penalties for code sections without a pre-existing
20 penalty.  However, FRCP 12(f) does not authorize courts to strike damages claims on
21 grounds that they are precluded as a matter of law, which is in effect what Defendants
22 are asking this Court to do.  *Whittlestone*, 618 F.3d at 975.  Defendants' motion is denied
23 as to these claims.
24 / / /
25 / / /

---

[5] *See Stearne v. Heartland Payment Systems LLC*, 2018 WL 746492, at *2-3 (E.D. Cal. 2018)

### g. California Unfair Competition Law Claim

Defendants move to strike in part and dismiss in part Plaintiff's claim under California Unfair Competition Law (UCL). The UCL allows only for restitution and injunctive relief, not for penalties. *Montecino v. Spherion Corp*, 427 F.Supp.2d 965 (C.D. Cal. 2006). Unpaid wages qualify as restitution rather than penalties. *Id.* References to recovery that does not meet the requirements of the UCL can be struck from the complaint. *Id.* Former employees lack standing to bring claims for injunctive relief. *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033 (9th Cir. 2006).

Defendants' argument is, essentially, that Plaintiff's UCL claims are predicated on her other statutory claims. Thus, if the Court determines that a predicate statutory claim should be stricken, the Court must also strike the corresponding UCL claims. The Court agrees. To the extent the Court has stricken or dismissed a predicate statutory claim, the corresponding UCL claim is also stricken or dismissed.

Defendant is correct in that references to recovery under codes that do not provide for restitution or injunctive relief can be stricken, as they were by the *Montecino* court. Plaintiff alleges no penalties under the UCL, asking instead for "restitution," and thus there is no reference to damages to which the motion to strike can apply. Plaintiff lacks standing to seek injunctive relief as a former employee. As such, Plaintiff's UCL claim is dismissed with respect to any penalties or injunctive relief.

### 4. Disposition

For the foregoing reasons: (1) the Individual Defendants' motion to dismiss for lack of jurisdiction is **GRANTED** and those defendants are **DISMISSED WITH PREJUDICE** from the case; and (2) the Corporate Defendants' motion to dismiss and/or strike is **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

**IT IS SO ORDERED**.

Dated: September 24, 2018

**HONORABLE LARRY ALAN BURNS**
United States District Judge